UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

KHRISTINA MCLAUGHLIN,                          :
                                               :
                    Plaintiff,                 :
                                               :
         -against-                             :        Case No. 1:17-cv-09023-RA
                                               :
                                               :
MACQUARIE CAPITAL (U.S.A.) INC., and           :
ROBERT ANSELL                                  :
                                               :
                    Defendants.                :
                                               :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X


### DEFENDANT MACQUARIE CAPITAL (U.S.A.) INC.'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

## <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES ..................................................................................................ii

PRELIMINARY STATEMENT ...........................................................................................1

STATEMENT OF FACTS ....................................................................................................2

      A.     Procedural History ...............................................................................2

      B.     Plaintiff's Underlying Claims of Discrimination,
              Harassment and Retaliation ................................................................3

      C.     Complaints Against McLaughlin and the April 11, 2018
              Meeting Between McLaughlin and Austin Dowling ...........................5

      D.     Plaintiff's Bonus ...............................................................................10

ARGUMENT ......................................................................................................................11

I.      PLAINTIFF CANNOT ESTABLISH ANY OF THE ELEMENTS
        NECESSARY TO OBTAIN A PRELIMINARY INJUNCTION.......................11

            a.     Plaintiff Is Not Threatened with Irreparable Harm........................12

            b.     Plaintiff Cannot Demonstrate a Likelihood of Success on
                 the Merits, or Sufficiently Serious Questions Going to the
                 Merits, of any of her Claims. .......................................................16

                 i.     Plaintiff's Harassment and Discrimination Claims
                       are Without Merit...............................................................16

                 ii.    Plaintiff's Retaliation Claims are Without Merit.............17

            c.     The Balance of the Equities Favors Macquarie. ...........................19

CONCLUSION....................................................................................................................20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Ahmad v. Long Island Univ.*,
    18 F. Supp. 2d 245 (E.D.N.Y. 1998) ...................................................................15

*Appalseed Prods., Inc. v. Medianet Digital, Inc.*,
    11 Civ. 5922 (PGG), 2012 U.S. Dist. LEXIS 93946
    (S.D.N.Y. July 6, 2012) .................................................................................11

*Bagley v. Yale Univ.*,
    No. 3:13-cv-1890 (CSH), 2014 U.S. Dist. LEXIS 177611
    (D. Conn. Dec. 29, 2014)..............................................................................14, 15

*Barturen v. Wild Edibles, Inc.*,
    No. 07 Civ. 8127 (LLS), 2007 U.S. Dist. LEXIS 93025
    (S.D.N.Y. Dec. 18, 2007)..............................................................................12

*Batchelor v. City of New York*,
    No. 11-cv-2058 (MKB) (VBS), 2014 U.S. Dist. LEXIS 46921
    (E.D.N.Y. Feb. 16, 2014)..............................................................................17

*Bennett v. Lucier*,
    239 F. App'x 639 (2d Cir. 2007) ......................................................................13

*Caputo v. Copiague Union Free Sch. Dist.*,
    218 F. Supp. 3d 186 (E.D.N.Y. Mar. 30, 2016)................................................18, 19

*Carchidi v. Kenmore Dev.*,
    123 F. App'x 435 (2d Cir. 2005) ......................................................................17, 18

*Centeno-Bernuy v. Perry*,
    302 F. Supp. 2d 128 (W.D.N.Y. 2003) .............................................................12

*Citibank, N.A. v. Citytrust*,
    756 F.2d 273 (2d Cir. 1985)............................................................................11

*Cooney v. Consol. Edison Co. of N.Y., Inc.*,
    No. 03 Civ. 0869 (KMW) (GWG), 2003 U.S. Dist. LEXIS 15657
    (S.D.N.Y. Sept. 10, 2003) .............................................................................15

*Garcia v. Lee*,
    No. 10-cv-1618 (JG), 2010 U.S. Dist. LEXIS 52082
    (E.D.N.Y. May 26, 2010) .............................................................................12

*Guitard v. U.S. Sec'y of Navy*,
    967 F.2d 737 (2d Cir. 1992)..............................................................................14

*Gutierrez v. Henoch*,
    998 F. Supp. 329 (S.D.N.Y. 1998) ...................................................................16

*Hickerson v. City of New York*,
    146 F.3d 99 (2d Cir. 1998)...................................................................11, 16, 19

*Holt v. Cont'l Grp., Inc.*,
    708 F. 2d 87 (2d Cir. 1983)...............................................................................12

*Holt v. KMI-Cont'l*,
    95 F.3d 123 (2d Cir. 1996)................................................................................12

*Hui-Lin v. Great Rose Fashion, Inc.*,
    No. 08-cv-4778 (NGG) (RLM) (E.D.N.Y. June 2, 2009) ....................................12

*IBM Corp. v. Visentin*,
    No. 11 Civ. 399 (LAD), 2011 U.S. Dist. LEXIS 15342
    (S.D.N.Y. Feb 16, 2011) ...................................................................................11

*JSG Trading Corp. v. Tray-Wrap, Inc.*,
    917 F.2d 75 (2d Cir. 1990)................................................................................11

*Lucky Brand Dungarees, Inc. v. Ally Apparel Res. LLC.*,
    206 F. App'x 10 (2d Cir. 2006) ........................................................................11

*Meritor Sav. Bank, FSB v. Vinson*,
    477 U.S. 57 (1986)............................................................................................16

*Mullins v. City of New York*,
    626 F.3d 47 (2d Cir. 2010)................................................................................12

*Nugent v. St. Luke's/Roosevelt Hosp. Ctr.*,
    No. 05 Civ 5109 (JCF), 2007 U.S. Dist. LEXIS 28274
    (S.D.N.Y. Apr. 18, 2007) ..................................................................................17

*Paul v. Postgraduate Ctr. for Mental Health*,
    97 F. Supp. 3d 141, 195 (E.D.N.Y. 2015) .........................................................19

*Pena-Barrero v. City of New York*,
    No. 14-cv-9550 (VEC), 2017 U.S. Dist. LEXIS 47983
    (S.D.N.Y. Mar. 30, 2017) .................................................................................19

*Rao v. N.Y. Health & Hosp. Corp.*,
    No. 89 Civ. 2700 (PNL), 1990 U.S. Dist. LEXIS 16455
    (S.D.N.Y. Dec. 5, 1990)....................................................................................14

*Sampson v. Murray*,
     415 U.S. 61 (1974) ................................................................................................. 14

*Soler v. G & U*,
     No. 78 Civ. 6252 (CHT), 1982 U.S. Dist. LEXIS 11093
     (S.D.N.Y. Jan. 15, 1982) ....................................................................................... 13

*Stoner v. N.Y. City Ballet Co.*,
     No. 99 Civ. 0196 (BSJ), 2001 U.S. Dist. LEXIS 19219
     (S.D.N.Y. Nov. 23, 2001) ...................................................................................... 13

*Triana v. Sodexo, Inc.*,
     No. 15-cv-5895 (RA), 2016 U.S. Dist. LEXIS 169088
     (S.D.N.Y. Dec. 7, 2016) ........................................................................................ 15

*Weinberger v. Romero-Barcelo*,
     456 U.S. 305 (1982) ............................................................................................... 11

*William v. N.Y. City Hous. Auth.*,
     61 A.D.3d 62 (2009) ............................................................................................... 17

STATUTES

N.Y. City Human Rights Law ............................................................................... 2, 17, 18

N.Y. State Human Rights Law ..................................................................................... 2, 17

## PRELIMINARY STATEMENT

There is no basis on which this Court should grant a preliminary injunction ordering Defendant Macquarie Capital (U.S.A.) Inc. ("Macquarie" or "Defendant") to reinstate Plaintiff Khristina McLaughlin ("McLaughlin" or "Plaintiff") from paid leave to active employment. As a threshold matter, the proper forum for the resolution of McLaughlin's claims (as well as those of Macquarie and others against her) is in arbitration, as she agreed in writing on multiple occasions.

Apparently undeterred by that dispositive flaw, McLaughlin now asks the Court to grant her perhaps the most extreme relief available to a civil litigant, a preliminary injunction. McLaughlin's motion does not remotely approach the standard required for the entry of such extraordinary relief – she makes no showing of any irreparable harm to herself should she not be reinstated, and she fails utterly to demonstrate any possible likelihood of success on the merits. In fact, Plaintiff completely avoids discussion of the merits of her underlying harassment and discrimination claims in her papers. Plaintiff's silence on these claims speaks volumes. Plaintiff cannot explain away the fact that she and Robert Ansell ("Ansell") exchanged some 32,000 known text messages over the course of 811 days, the contents of which clearly demonstrate the consensual and welcome nature of their relationship.

A preliminary injunction is a drastic measure, granted only when the Plaintiff demonstrates that (i) she would suffer "irreparable harm" absent an injunction; (ii) she is likely to succeed on the merits of her claims; and (iii) the balance of the equities favors an injunction. As explained below, Plaintiff satisfies none of these requirements.

First, Plaintiff cannot demonstrate irreparable harm.  It is well-established that injunctive relief is generally not appropriate in the employment context, because the alleged harm can be redressed by a monetary award. Plaintiff claims – quite incredibly – that she will suffer reputational damage if not reinstated into the workplace. But any reputational damage she allegedly suffers here is

the direct result of her own decision to ignore her legal obligation to resolve this dispute in arbitration, and instead file a misleading and salacious public complaint, while seeking maximum press coverage to bolster the suit's visibility.  In any event, courts have consistently held that reputational harm simply does not amount to irreparable harm.  Plaintiff also speculates that her placement on paid leave will have a "chilling" effect on other employees' exercise of rights in bringing complaints of discrimination, but she alleges no facts whatsoever to support this speculative conclusion.  Thus, Plaintiff fails to establish that she will suffer irreparable harm if not reinstated.  Her claims should fail based on this reason alone.

However, Plaintiff has also failed to establish the second and third elements required to obtain a preliminary injunction. Plaintiff cannot demonstrate a likelihood of success on the merits.  Her claims for harassment and retaliation stand are frivolous.  And, the balance of equities does not favor an injunction that would interfere with Macquarie's ability to regulate its workplace.

For these reasons, the extraordinary remedies sought by Plaintiff should be rejected in their entirety.

## STATEMENT OF FACTS

### A.  Procedural History

On October 23, 2017, Plaintiff alerted Defendant for the first time, through counsel, of her claim that her supervisor, Ansell, coerced her into a sexual relationship that became a term and condition of her employment. (*See* ECF 18-1, Ex. D)  On November 17, 2017, in express violation of the arbitration agreement set forth in her employment agreement (*See* ECF 16), Plaintiff filed the instant lawsuit, alleging claims of sexual harassment and sex discrimination, and retaliation, in violation of Title VII, the New York State Human Rights Law ("NYSHRL") and the New York City Human Rights Law ("NYCHRL"). (ECF 1)

Defendant successfully petitioned the court to temporarily seal the complaint pending its forthcoming Motion to Compel to Arbitration. (*See* ECF 3) On November 28, 2017, Defendant filed claims in confidential arbitration before the American Arbitration Association ("AAA") against Plaintiff, asserting breach of contract, and seeking a declaratory judgment that it has committed no discrimination or retaliation against her.  On December 8, 2017, Plaintiff filed an Amended Complaint (the "Complaint") under seal with the Court, adding meritless retaliation claims. The Complaint was officially sealed and entered into the docket on December 22, 2017. (ECF 14)   On December 22, 2017, Defendant moved to compel this case into arbitration. (ECF 15-16) The parties have briefed the Motion to Compel, and currently await a decision on the same. Throughout the pendency of this matter, up until April 18, 2018, Plaintiff remained in the workplace, continuing to perform her duties as Head of U.S. Cash Equities Sales for Macquarie.

### B.  Plaintiff's Underlying Claims of Discrimination, Harassment and Retaliation

After Plaintiff made her initial complaint, Macquarie's Human Resources department promptly investigated the issues raised therein. (Dowling Decl. at ¶ 2).  After a thorough investigation, Macquarie concluded that no harassment had taken place, but rather that Ansell and McLaughlin had engaged in a consensual relationship, which began when Plaintiff and Ansell were colleagues with no supervisory or reporting relationship. (Dowling Decl. at ¶ 3). Further, in the months following the filing of the Complaint and the Motion to Compel Arbitration, Defendant has come into possession of a veritable mountain of evidence refuting Plaintiff's claims of sex harassment and discrimination.  From Plaintiff's mobile device, Defendant collected more than 32,000 text messages exchanged between Plaintiff and Ansell over the course of 811 days, roughly half of which were sent by Plaintiff. (Chinn Decl. ¶¶ 3, 4). These text messages paint a clear picture of a consensual sexual relationship. Upon review of these text messages, it became clear to Defendant that Plaintiff – in an instance of sanctionable conduct – selectively and misleadingly edited certain citations to the text messages in the

3

Complaint, to better fabricate support for her otherwise meritless claims. (Chinn Decl. ¶ 5). And through those tens of thousands of messages, Plaintiff made her strong emotional attachment and physical attraction to Ansell quite clear.

Nevertheless, and contrary to Plaintiff's allegations of retaliation both in the Complaint and in the instant motion, Macquarie has consistently worked to create a sense of normalcy in the workplace and to combat any potential retaliation against Plaintiff. After Plaintiff's initial complaint, on the same day that the announcement regarding Ansell's exit[1] from the business was announced to the entire staff, Alexis Conoscente ("Conoscente"), Human Resources Business Partner for Commodities and Global Markets in the U.S., met with a number of senior managers on the Cash Equities platform.  (Conoscente Decl. ¶¶ 2-3).  Conoscente instructed the group that, as leaders of their various desks, it was incumbent upon them to ensure that the workplace remained professional, especially with respect to Plaintiff, prevent the spreading of gossip and rumors regarding Ansell's exit or Plaintiff, and ensure that their respective teams acted accordingly. (Conoscente Decl. ¶ 4). The gathered members of leadership agreed to follow these instructions. (Conoscente Decl. ¶ 5).

Approximately one week after Plaintiff's initial October 23, 2017 complaint to Macquarie, Plaintiff alerted Macquarie, through counsel, of certain purported instances of retaliation by certain co-workers, including that several of them appeared to avoid eye contact and/or interaction with her. (Kiernan Decl. ¶ 2). Jenny Kiernan ("Kiernan"), Human Resources Business Partner for Commodities and Global Markets in the U.S., investigated these complaints. (Kiernan Decl. ¶ 3). She determined after doing so that no one had purposefully avoided Plaintiff or acted in a retaliatory manner. *Id.*

---

[1] Though Macquarie concluded after an investigation into Plaintiff's claims that her relationship with Ansell was consensual, Macquarie chose to terminate Ansell's employment for violating firm policy.

4

Similarly, after Plaintiff filed her public complaint before this Court, Andrew Downe ("Downe"), Global Head of Commodities and Global Markets for Macquarie, and Dan Ritchie ("Ritchie"), Executive Director in Cash Equities, Commodities and Global Markets (and the most senior member of management with oversight of the Cash Equities division after Ansell's exit), held a meeting with Plaintiff and the entire U.S. Cash Equities Sales team, with members of the team outside of New York attending via web conference. (Ritchie Decl. ¶ 2). Ritchie and Downe emphasized that McLaughlin, like every Macquarie employee, had a right to raise concerns and/or file a complaint, that neither her role nor anyone else's had changed as a result of the filing of the complaint, and that each member of the team should continue to treat each other with professional courtesy. (Ritchie Decl. ¶ 3). They then stated that if any member of the team had any concerns regarding this matter, including regarding client questions or concerns about the public lawsuit or the news in the press, they should feel free to reach out to McLaughlin, Downe, Ritchie, or the Human Resources department for assistance. (Ritchie Decl. ¶ 4).

On November 30, 2017, Austin Dowling ("Dowling"), Regional Head of Human Resources, Americas, and Kiernan, met with at least four senior sales traders to address and provide guidance regarding the news in the press and client-related concerns and inquiries. (Kiernan Decl. ¶ 4). During that meeting, the sales traders were reminded of the importance of appropriate workplace behavior and management's expectations of their conduct in the office and with respect to their roles, which required them to work closely with McLaughlin and the sales team. (Kiernan Decl. ¶ 5). Through these meetings, and throughout the next several months, Macquarie consistently and repeatedly advised and instructed members of management and employees alike that the filing of Plaintiff's complaint would not change her role or senior leadership status at Macquarie, and that everyone should carry on with business as usual in accordance with Macquarie's standards and values.

### C. Complaints Against McLaughlin and the April 11, 2018 Meeting Between McLaughlin and Austin Dowling

Over the course of the next several months, members of Macquarie's Human Resources department fielded complaints and concerns from several different employees regarding McLaughlin's behavior and leadership. (Dowling Decl. ¶ 4).   Complaints about McLaughlin were raised by both her subordinates, and by employees and colleagues outside of her team. (Dowling Decl. ¶ 5).  These included, *inter alia*:

- a complaint by one of her subordinates that she made an ageist comment about him in front of a client during a client meeting;

- a complaint by a member of senior leadership that Plaintiff repeatedly referred to one of her subordinates using a negative nickname during a management meeting;

- a complaint from a colleague that Plaintiff made comments regarding prescription drugs that made the colleague uncomfortable;

- a complaint by one junior female employee (in a different division) that Plaintiff attempted to discuss with her Plaintiff's impressions of Ansell in a way that made the junior female feel uncomfortable; and

- a complaint by a member of the senior leadership team that Plaintiff was not properly advocating for her subordinates, after Plaintiff rejected a request by the colleague that Plaintiff send one of her senior direct reports to a conference as a growth opportunity. Plaintiff insisted on attending the conference herself instead, but even then ultimately ended up not attending the conference.

(Dowling Decl. ¶ 6).   As end-of-year appraisals approached, a number of U.S. Cash Equities sales persons on McLaughlin's team requested that Ritchie attend their appraisal meetings along with McLaughlin, rather than have those meetings with McLaughlin alone. (Dowling Decl. ¶ 7).

6

In addition to receiving the above complaints about Plaintiff, Plaintiff made it clear to Macquarie that what she was doing was attempting to extract the maximum amount of money from Macquarie in exchange for leaving the firm and thus ending the disruption she was causing to Macquarie's U.S. Cash Equities business.  McLaughlin approached Ritchie and advised him that the cost of the disruption she was causing the U.S. Cash Equities business was higher than the amount that Macquarie was offering. (Ritchie Decl. ¶ 6). She implored Ritchie to speak with Downe, to convince him to offer her more. *Id.* She followed up with Ritchie once over the course of the next week, pressuring him to speak with Downe. (Ritchie Decl. ¶ 7).

Plaintiff's extortionary approach came to a head on April 11, 2018, in a meeting between Plaintiff and Dowling, which Plaintiff completely mischaracterizes in her moving papers. Kiernan had informed Plaintiff that certain members of her team had raised concerns about her, and requested to have Ritchie join McLaughlin in their appraisal meetings. (Kiernan Decl. ¶ 6; Ex. A to Kiernan Decl.). Dowling and McLaughlin then met to discuss these issues. (Dowling Decl. ¶ 8). During this meeting, Dowling shared the aforementioned complaints from subordinates and colleagues with Plaintiff. (Dowling Decl. ¶ 9).   Plaintiff denied that she had made an ageist comment about a direct report, denied the characterization of the conversation about prescription drugs, and in response to the complaint about advocating for her subordinates, responded that she was a strong advocate for that particular direct report and her team. *Id.* As to the complaint about the negative nickname, she said this was "already dealt with." *Id.* She did not contest the complaint about her questioning a female staff member outside of Cash Equities about Ansell. *Id.* McLaughlin then proceeded to make several comments, including:

- that Macquarie thinks it can "get out of this for a measly half of a severance package";

- that Macquarie shouldn't "assume that [she would] just go away"; and

- that someone in the workplace was going to "slip up" sometime soon by doing something that could be characterized as retaliation against her, thus increasing the value of her claim.

(Dowling Decl. ¶ 10).

When Dowling then asked McLaughlin how Macquarie could continue to support her through this difficult time, McLaughlin responded that she wanted to be put on paid leave. (Dowling Decl. ¶ 11).  Dowling asked McLaughlin if she meant that she would like to work from home; McLaughlin declined, reiterating her desire to be put on paid leave. *Id.* Dowling stated that he could explore the option internally with senior management, and then asked a final time whether McLaughlin was sure she wanted paid leave. *Id.* McLaughlin replied yes. *Id.* Dowling concluded the meeting by stating that he would seek approval for her leave. *Id.* Though Dowling and McLaughlin were the only two attendees of this meeting, several Human Resources employees who were sitting immediately outside of the conference room heard McLaughlin's loud and raised voice throughout the meeting.  One Macquarie employee overheard parts of their conversation, including McLaughlin shouting, "I can't work here anymore!" (Cardinale Decl. ¶ 3).  Upon exiting the conference room after the meeting, Dowling shared with employees in his group that McLaughlin had just requested leave. (Cardinale Decl. ¶ 4).  To avoid any confusion about the matter, shortly after the meeting, Dowling promptly confirmed by email McLaughlin's request to be placed on paid leave.  (Dowling Decl. ¶ 12, Ex. A to Dowling Decl.).   At no time did McLaughlin ever respond to that email, dispute that she made the request, or rescind her request.   As is evident from the declared testimony of multiple witnesses, McLaughlin's characterization in her moving papers of the meeting between Dowling and herself is riddled with falsehoods.

Unsurprisingly, Plaintiff also misrepresents the April 13, 2018 conversation between herself and Ritchie. In that discussion, Plaintiff again made it plain that she was using her continued presence in the workplace as a mere negotiating tactic, on the advice of her counsel. (Ritchie Decl. ¶ 8). Plaintiff requested again that Ritchie "pitch" a settlement with her to Macquarie leadership, which would allow the business to move forward. *Id.* Plaintiff's repeated comments made quite clear that she viewed her presence in the workplace, as well as her lawsuit against Macquarie, in entirely mercenary terms.

On Wednesday, April 18, 2018, Dowling advised Plaintiff that her request for paid leave had been granted, and that her paid leave status would be revisited in a month's time. (Ex. B to Dowling Decl.). He notified her that, in accordance with Macquarie procedure, her building and IT access would be suspended during her leave. *Id.* In closing, he offered to work with her in crafting an acceptable message to her team and clients regarding her absence. *Id.*

In response, Plaintiff immediately attempted to reverse her position, retracting her leave request, while making it clear that she was doing so because she had consulted with her attorney and was advised that she would lose settlement leverage if she went on leave. (Ex. B to Dowling Decl.) Dowling replied that, given (1) that she requested paid leave and the firm approved her request, (2) her concerns regarding her interactions with other employees (*i.e.* that someone was going to "slip up" and do something that could be characterized as retaliation against her), (3) the concerns other employees had raised, and (4) the fact that a former employee had raised a legal claim of retaliation and a hostile work environment against her, her placement on paid leave was the best course of action for both the business and herself. (Dowling Decl. ¶14; Ex. *Id.*) McLaughlin responded that she intended to return to work on Friday, April 20, 2018. (Ex. B to Dowling Decl.). Dowling unambiguously advised McLaughlin that her leave request had been approved and instructed her not to come into the office pending further discussion. (Ex. B to Dowling Decl.).

9

Plaintiff nonetheless arrived for work on Thursday, April 19, 2018. Although aware that her access to the firm's trading floor had been disabled, Plaintiff gained unauthorized entry without authorization and attended the department's morning meeting.  To avoid embarrassment for Plaintiff, Ritchie held the meeting normally, and pulled Plaintiff aside privately after the meeting concluded.  Ritchie politely reminded her that she had been placed on paid leave and that she should not be in the office. (Ritchie Decl. ¶ 9).  Rather than depart the premises, Plaintiff instead proceeded to sit in the lobby of the building, presumably in an attempt to attract as much public attention as possible.  (Ex. D to Dowling Decl.) Later that day, Dowling again extended an offer to Plaintiff to provide input on a statement to her staff and clients about her leave, to which Plaintiff did not respond. (Ex. C to Dowling Decl.)

### D. Plaintiff's Bonus

As Plaintiff noted in her moving papers, at the time they were filed, Macquarie had not yet discussed with her the amount of discretionary profit share bonus that she would be receiving for fiscal year 2018. Macquarie had attempted to contact Plaintiff by email on May 2, 2018 to discuss her year-end appraisal and profit share bonus, but due to a technical issue, the email was interrupted and not received by Plaintiff. (Ritchie Decl. ¶ 10; Ex. A to Ritchie Decl.) After successfully contacting Plaintiff, on May 9, 2018, Ritchie and Dowling held a videoconference with Plaintiff in which they conveyed to her the amount of discretionary profit share that she would be receiving. (Ritchie Decl. ¶ 12); (Dowling Decl. ¶ 15).   The amount awarded reflected several reasons, including mainly the performance of the Cash Equities business in the U.S. for that fiscal year, as well as the fact that, on average, the senior leadership team as a group was down this year compared to previous years.   (Ritchie Decl. ¶ 13). Additionally, Dowling explained that the amount awarded also reflected her overall conduct as a senior leader of Cash Equities, including the events immediately following being placed on paid leave. (Dowling Decl. ¶ 16). This included her blatant disregard of Dowling's direct instructions that she was on paid

10

leave, and should not come in, as well as her decision to breach security protocols by gaining unauthorized entry to the premises after being placed on paid leave. *Id.* Based on her erratic behavior and her desire to leave, emphatically expressed through repeated references to her settlement negotiations, and through derogatory statements about the business (including referring to Macquarie as a "joke"), Macquarie senior management, in consultation with the Human Resources department, determined that McLaughlin should remain on paid leave. (Ritchie Decl. ¶ 14); (Dowling Decl. ¶ 17).


## ARGUMENT

### I.  PLAINTIFF CANNOT ESTABLISH ANY OF THE ELEMENTS NECESSARY TO OBTAIN A PRELIMINARY INJUNCTION.

"A preliminary injunction is an extraordinary and drastic remedy which should not be routinely granted." *IBM Corp. v. Visentin*, No. 11 Civ. 399 (LAD), 2011 U.S. Dist. LEXIS 15342, a *18 (S.D.N.Y. Feb 16, 2011); *see also Lucky Brand Dungarees, Inc. v. Ally Apparel Res. LLC.*, 206 F. App'x 10, 11 (2d Cir. 2006).  The party seeking such drastic relief bears the burden of establishing that, (1) absent such relief, it will suffer an irreparable injury; and (2) either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits and a balance of hardships tipping in the moving party's favor.  *Hickerson v. City of New York*, 146 F.3d 99, 103 (2d Cir. 1998).


### a.  Plaintiff Is Not Threatened with Irreparable Harm.

"Perhaps the single most important prerequisite for the issuance of a preliminary injunction is a demonstration that if it is not granted the applicant is likely to suffer irreparable harm before a decision on the merits can be rendered." *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 275 (2d Cir. 1985) (citation omitted); *see also Appalseed Prods., Inc. v. Medianet Digital, Inc.*, 11

Civ. 5922 (PGG), 2012 U.S. Dist. LEXIS 93946, at *36 (S.D.N.Y. July 6, 2012) ("Failure to establish irreparable harm is alone sufficient for a court to deny injunctive relief to the moving party." (Citation omitted)). Also, the applicant must establish more than a mere "possibility" of irreparable harm, but rather, she must show that irreparable harm is "likely" to occur." *See JSG Trading Corp. v. Tray-Wrap, Inc.,* 917 F.2d 75, 79 (2d Cir. 1990). Also essential to a showing of irreparable harm is the unavailability or at least inadequacy of a money damages award. *See, e.g., Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982) ("The Court has repeatedly held that the basis for injunctive relief in the federal courts has always been irreparable injury and the inadequacy of legal remedies.") Plaintiff has not pled, and cannot show, irreparable harm or the inadequacy of money damages.  She has made conclusory allegations of a "chilling effect" on other employees in exercising their rights to file discrimination complaints, and of harm to her professional reputation, which do not qualify as irreparable harm in the Second Circuit.

To support her assertion that Plaintiff's placement on paid leave will cause irreparable harm, Plaintiff cites cases regarding the potential "chilling effect" of retaliatory actions by employers.  But in each of these cases, the plaintiff introduced actual evidence of a "chilling effect" because of the employer's alleged actions, something McLaughlin has made no attempt whatsoever to do.  In *Mullins v. City of New York*, 626 F.3d 47 (2d Cir. 2010), for example, plaintiffs set forth evidence in the form of witness testimony that "absent injunctive relief numerous plaintiffs would likely (and reasonably) withdraw from this litigation rather than testify and face [retaliation]."[2] *Id.* at 55. In *Holt v. Cont'l Grp., Inc.,* 708 F. 2d 87 (2d Cir. 1983),

---

[2] Likewise, in *Garcia v. Lee*, No. 10-cv-1618 (JG), 2010 U.S. Dist. LEXIS 52082, at *4-6 (E.D.N.Y. May 26, 2010), the court credited testimony from plaintiffs that the threat of retaliation discouraged other employees from participating in the class action lawsuit. The same is true of *Barturen v. Wild Edibles, Inc.*, No. 07 Civ. 8127 (LLS), 2007 U.S. Dist. LEXIS 93025, at *10-11 (S.D.N.Y. Dec. 18, 2007) (crediting unrefuted testimony by plaintiffs that they had spoken to co-workers who were intimated by the allegedly retaliatory terminations, and that the terminations caused named plaintiffs to consider dropping their claims), and *Centeno-Bernuy v. Perry*, 302 F. Supp. 2d 128, 134-135 (W.D.N.Y. 2003)(crediting testimony that plaintiffs were "reluctant to appear in court" for fear of arrest and deportation, and that certain witnesses were reluctant to testify). Plaintiff has introduced no such evidence here.

the court specifically held that "we do not…accept the EEOC's suggestion that there is irreparable injury sufficient to warrant a preliminary injunction in every retaliation case," and then remanded to the district court to reconsider plaintiff's preliminary injunction in light of the potential chilling effect of the retaliatory discharge that the plaintiff had alleged. *Id.* at 91-92. The district court then denied the preliminary injunction in an unpublished opinion. *See Holt v. KMI-Cont'l*, 95 F.3d 123, 127 (2d Cir. 1996). As the court in *Hui-Lin v. Great Rose Fashion, Inc.,* noted, (another case upon which Plaintiff mistakenly relies), since *Holt,* "the Second Circuit has indicated that irreparable harm may be found where there is ***specific evidence*** of a deterrent effect on the exercise of workers' rights." No. 08-cv-4778 (NGG) (RLM), 2009 U.S. Dist. LEXIS 46726, at *58 (E.D.N.Y. June 2, 2009) (emphasis added).

First, Macquarie has engaged in absolutely no retaliatory activity. After Plaintiff filed her complaint, Macquarie took swift and definite measures to ensure that everyone in the workplace understood that it was business as usual, and that no one, least of all Plaintiff, should be treated differently as a result of the complaint. (*See supra* at 3-5). And, Macquarie's refusal to accept McLaughlin's after-the-fact reversal on her request for paid leave was completely justifiable and non-retaliatory, given that (i) Plaintiff's only reason for doing so was clearly a negotiating tactic and (ii) her conduct in connection with her request and its granting justifies keeping her out of the workplace. (*See supra* at 5-7).

Second, Plaintiff has not set forth a scintilla of evidence of any potential chilling effect on other employees if she is not reinstated. She cites vague and conclusory notions of the likelihood that a "reasonable [female] employee" at Macquarie would be deterred from engaging in protected activity because of the way she has been treated following her complaints. (ECF 44, at 13). Not only has Plaintiff put forth no evidence that other employees are being chilled by her allegedly retaliatory placement on paid leave, as noted above, Defendant has received multiple

complaints regarding Plaintiff's behavior from peers and subordinates, men and women alike. (*See supra* at 5-6)

Where a plaintiff adduces "no evidence of actual conduct by the [employer] producing a chilling effect," that plaintiff "has failed to demonstrate the existence of any chilling effect on other employees." *Stoner v. N.Y. City Ballet Co.*, No. 99 Civ. 0196 (BSJ), 2001 U.S. Dist. LEXIS 19219, at *7-9 (S.D.N.Y. Nov. 23, 2001); *see also Bennett v. Lucier,* 239 F. App'x 639, 640 (2d Cir. 2007) ("[T]o obtain injunctive relief [plaintiff] must show some evidence of actual chill that would be cured by the requested injunction."); *Soler v. G & U*, No. 78 Civ. 6252 (CHT), 1982 U.S. Dist. LEXIS 11093, at *11 (S.D.N.Y. 1982)("[T]he mere possibility of a chilling effect on the farmworkers' future exercise of their rights, when no such chilling effect has been shown here, is too remote and speculative an injury on which to base a preliminary injunction"); *Rao v. N.Y. Health & Hosp. Corp.*, No. 89 Civ. 2700 (PNL), 1990 U.S. Dist. LEXIS 16455, at *16-17 (S.D.N.Y. Dec. 5, 1990) ("[Plaintiff] presents no evidence, in the form of affidavits or otherwise, that co-workers . . . have been deterred from filing discrimination claims or have refused to cooperate with plaintiff's efforts to obtain discovery. In the absence of any evidence, there is no basis for finding irreparable injury.").  Plaintiff has completely failed to make the requisite demonstration here.

Plaintiff also asserts that she will suffer reputational damage if not reinstated into the workplace. First, any reputational damage Plaintiff suffers is the direct result of her deliberate decision to ignore her legal obligation to resolve her dispute in arbitration, and to instead file a misleading and salacious public complaint, while seeking press coverage to bolster the suit's visibility to the public. (*See* ECF 16, at 5). Second, it is well established that reputational damage from adverse employment actions does not constitute the requisite irreparable harm to support injunctive relief.  *See Sampson v. Murray*, 415 U.S. 61, 89, 92 (1974) (overturning the lower court's determination that loss of earnings or damage to

reputation might afford a basis for a finding of irreparable injury and provide a basis for injunctive relief); *see also Guitard v. U.S. Sec'y of Navy*, 967 F.2d 737, 742 (2d Cir. 1992) ("[T]he Supreme Court held that the injuries that generally attend a discharge from employment--loss of reputation, loss of income and difficulty in finding other employment--do not constitute the irreparable harm necessary to obtain a preliminary injunction.").

Courts in this Circuit have repeatedly denied injunctions under circumstances similar to those here. In *Bagley v. Yale Univ.*, No. 3:13-cv-1890 (CSH), 2014 U.S. Dist. LEXIS 177611 (D. Conn. Dec. 29, 2014), for example, the court denied injunctive relief in a gender and age discrimination lawsuit to a professor who was denied tenure.  The court noted that, because it could order reinstatement of her employment, Bagley "cannot characterize Yale's termination of her employment, even if discriminatory, as a cause of *irreparable* harm."  *Id.* at *19.  Relying on established precedent, the court rejected plaintiff's argument that reputational harm could constitute irreparable harm necessary to warrant an injunction, stating:

> It is equally clear from the cited cases that damage to a plaintiff's reputation in his or her chosen field does not constitute irreparable harm, in the sense that it cannot be compensated by monetary damages at trial.  There is nothing surprising about that:  for centuries, the common law of defamation has afforded plaintiffs damages for loss of reputation.

*Id.* at *26.  *See also Triana v. Sodexo, Inc.*, No. 15-cv-5895 (RA), 2016 U.S. Dist. LEXIS 169088, at *7 (S.D.N.Y. Dec. 7, 2016)(holding that "damage to reputation, such as [plaintiff's] allegation that 'no one is likely to want to hire' him again," was insufficient to establish irreparable harm sufficient to issue preliminary injunction.);  *Cooney v. Consol. Edison Co. of N.Y., Inc.*, No. 03 Civ. 0869 (KMW) (GWG), 2003 U.S. Dist. LEXIS 15657, at *10 (S.D.N.Y. Sept. 10, 2003) (finding that plaintiff's allegations that a termination would result in "defamation of plaintiff's professional and moral character" was insufficient to support a finding of irreparable injury); *Ahmad v. Long Island Univ.*, 18 F. Supp. 2d 245, 249 (E.D.N.Y. 1998)

("While the Court does not dispute the plaintiff's suggestion that his loss of employment will occasion some loss of reputation and interruption in his research and work, this does not amount to 'irreparable harm.').

Plaintiff ignores the authority discussed above, and fails to cite *a single case* supporting her argument that any alleged damage to her reputation as a result of her placement on paid leave is irreparable, and incapable of being remedied by an award of money damages. (ECF 44, pp. 16-17).  Her claim of irreparable harm based on reputational damage must fail.

Finally, though her bonus had not yet been awarded when she filed the instant motion, Defendant has since communicated to Plaintiff the amount of discretionary profit share that she will be receiving for the 2017-2018 fiscal year. (*See* supra, pp. 10-11). As such, Plaintiff's allegation that she will be "deprive[d] of her entitlement to receive a well-earned bonus" is moot. (ECF 44, p. 17). Plaintiff has failed entirely to establish that she will suffer irreparable harm absent her reinstatement into the workplace.

### b.  Plaintiff Cannot Demonstrate a Likelihood of Success on the Merits, or Sufficiently Serious Questions Going to the Merits, of any of her Claims.

To merit injunctive relief, Plaintiff must also demonstrate either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits.  *Hickerson*, 146 F.3d at 103.  For purposes of her application for an injunction, Plaintiff avoids discussing the merits of her underlying harassment and discrimination claims, focusing solely on the merits of her claim of retaliation.   As stated below, Plaintiff has not demonstrated, and cannot demonstrate, that she is likely to prevail on any of her claims, or that there are serious questions as to the merits of those claims.

### i.  Plaintiff's Harassment and Discrimination Claims are Without Merit.

Plaintiff completely avoids discussing the merits of her underlying harassment and discrimination claims in her moving papers. Plaintiff's silence on these claims is tantamount to a

concession that they are baseless. Plaintiff cannot explain away the fact that she and Ansell exchanged some 32,000 known text messages over the course of 811 days, the contents of which clearly demonstrate the consensual and welcome nature of their relationship. (Chinn Decl. ¶ 3) Voluntary, romantic relationships cannot form the basis of a sex discrimination suit, as "[t]he gravamen of any sexual harassment claim is that the alleged sexual advances were unwelcome." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 68 (1986). Additionally, McLaughlin's intentionally misleading citation to only portions of certain text messages in the Complaint, while omitting crucial context and even words that she herself wrote, is devastating to the credibility of her claims. *See, e.g., Gutierrez v. Henoch*, 998 F. Supp. 329, 336 (S.D.N.Y. 1998) (dismissing plaintiff's discrimination claim where her "complaint misrepresent[ed] the factual circumstances surrounding her departure[.]"). Plaintiff cannot overcome these fatal defects in her claims, and as such cannot come anywhere close to showing a likelihood of success on the merits of her harassment and discrimination claims.

### ii.  Plaintiff's Retaliation Claims are Without Merit.

To establish a prima facie case of retaliation under Title VII and the NYSHRL, a plaintiff must show that "'(1) she was engaged in [a protected] activity . . .; (2) the employer was aware of the plaintiff's participation in the protected activity; (3) the employer took adverse action against the plaintiff; and (4) a causal connection existed between the plaintiff's protected activity and the adverse action taken by the employer.'"  *Carchidi v. Kenmore Dev.*, 123 F. App'x 435, 436 (2d Cir. 2005) (citation omitted). To prevail on a retaliation claim under the NYCHRL, Plaintiff must show that she took an action opposing her employer's discrimination, and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action. *William v. N.Y. City Hous. Auth.*, 61 A.D.3d 62, 71 (2009).

Plaintiff must first show that Defendant took adverse action against her, or under the NYCHRL, engaged in conduct that was "reasonably likely to deter a person from engaging in

protected activity." *Williams*, 61 A.D.3d at 71. As to the period before Plaintiff was placed on paid leave, Plaintiff alleges that Defendant has insufficiently contained the rumors regarding Ansell's exit from the business, and that her coworkers have committed various petty slights against her. (*See* Compl. ¶¶ 341-391). As established above, Macquarie has consistently emphasized to members of its leadership and employees alike that no one should be discussing or spreading rumors regarding Ansell's exit, and that Plaintiff's complaint changed nothing about her role, or about how all employees should treat each other in the workplace. (*See supra* at 4-7).

As to the alleged petty slights that Plaintiff alludes to, even if they were true, they do not even come close to the level of an "adverse action."   *See, e.g., Nugent v. St. Luke's/Roosevelt Hosp. Ctr.*, No. 05 Civ. 5109 (JCF), 2007 U.S. Dist. LEXIS 28274, at *30-31 (S.D.N.Y. Apr. 18, 2007) (finding that "nasty looks," and "angry silences," from supervisor as well as "mockery" from coworkers did not constitute adverse action for purposes of retaliation claim).  Even under the more permissive NYCHRL standard for retaliation, the petty slights that Plaintiff alleges do not meet the standard of conduct that is reasonably likely to deter a person from engaging in protected activity. *See, e.g.*, *Batchelor v. City of New York*, No. 11-cv-2058 (MKB) (VBS), 2014 U.S. Dist. LEXIS 46921, at *165 (E.D.N.Y. Feb. 16, 2014) (finding that claims of "overscrutiny" did not amount to retaliation under the NYCHRL).

Neither can Plaintiff establish that being placed on a paid leave, *which she herself requested*, is an adverse action. It defies common sense to argue that Defendant adversely affected Plaintiff by granting a request that she explicitly made to a senior member of Defendant's Human Resources department. (*See supra* at 8-10).

Even assuming *arguendo* that an adverse action had taken place against Plaintiff (and it has not), Plaintiff has also failed to prove that "a causal connection existed between the plaintiff's protected activity and the adverse action taken by the employer.'" *Carchidi*, 123 F.

18

App'x 435, 436 (citation omitted). Plaintiff relies exclusively on the temporal connection between her initial complaint and her placement on paid leave to establish a causal connection. (ECF 44 at 13-14). Six months passed between Plaintiff's initial complaint on October 23, 2017, and her placement on paid leave. (*See supra* at 9). Though Plaintiff cites *Caputo v. Copiague Union Free Sch. Dist.*, 218 F. Supp. 3d 186 (E.D.N.Y. Mar. 30, 2016) for the proposition that seven months between the protected activity and the alleged adverse action is not too attenuated to establish a causal connection, the court in *Caputo* noted that "the seven months gap in this case may test the outer limits of inferring a causal connection," and found that other allegations in the complaint aside from the temporal connection were necessary to bolster plaintiff's claims. *Id.* at 195. Courts in this Circuit have found that, without more, a temporal connection such as the one relied upon here is not enough to establish a causal connection between protected activity and an adverse action. *See, e.g., Pena-Barrero v. City of New York*, No. 14-cv-9550 (VEC), 2017 U.S. Dist. LEXIS 47983, at *52 (S.D.N.Y. Mar. 30, 2017)(holding that five month period between protected activity and adverse action "alone is insufficient to suggest a causal connection."); *Paul v. Postgraduate Ctr. for Mental Health*, 97 F. Supp. 3d 141, 195 (E.D.N.Y. 2015) ("[I]n the Second Circuit, district courts have consistently held that the passage of two to three months between the protected activity and the adverse employment action does not allow for an inference of causation to make a *prima facie* case"). As such, Plaintiff has failed to establish a causal connection between her complaint and her placement on paid leave. As Plaintiff cannot establish even a prima facie case of retaliation, she certainly cannot establish a likelihood of success on the merits, or serious questions going to the merits, of her retaliation claims.

c. __The Balance of the Equities Favors Macquarie.__

Finally, Plaintiff cannot meet *Hickerson*'s requirement that the "balance of hardships tip[] in favor of the movant." *Hickerson*, 146 F.3d at 103. Instead, the balance of equities tilts

heavily in Macquarie's favor. Plaintiff's own conduct precludes a finding that the balance weighs in her favor.  If the court orders a preliminary injunction, Plaintiff will have succeeded in being reinstated into the workplace for the admitted sole purpose of maintaining leverage in her settlement negotiations with Macquarie.  Macquarie would be substantially undermined in managing its affairs if it cannot place an employee on paid leave who has made it plain that she will not represent Macquarie's best interests.  That concern is further heightened for Macquarie here, as it is a financial institution that operates in one of the most heavily regulated industries. Macquarie should not be forced to allow a senior executive (who manages more than 20 employees) with no motivation or intention to contribute to the professional mission of the company back into the workplace under such circumstances.

## **CONCLUSION**

Plaintiff Khristina McLaughlin's application for preliminary injunctive relief should be denied.

Respectfully submitted,

Dated: May 15, 2018

PROSKAUER ROSE LLP

*/s/ Lloyd B. Chinn*
Lloyd B. Chinn
Jenna L. Hayes
11 Times Square
New York, NY 10036
lchinn@proskauer.com
jhayes@proskauer.com
T: (212) 969-3000
*Attorneys for Defendant*

20