USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 5/7/18

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KHRISTINA MCLAUGHLIN,

                Plaintiff,

v.

MACQUARIE CAPITAL (USA) INC. and
ROBERT ANSELL,

                Defendants.

No. 17-CV-9023 (RA)

<u>OPINION & ORDER</u>

RONNIE ABRAMS, United States District Judge:

    Plaintiff Khristina McLaughlin brings this action against Defendants MacQuarie Capital and Robert Ansell alleging violations of Title VII, the NYSHRL, and the NYCHRL. Before the Court are Defendants' motions to compel arbitration. For the reasons set forth below, MacQuarie's motion is granted and the action is stayed.

## BACKGROUND

    McLaughlin began her employment with MacQuarie in February of 2012 as a Managing Director in its U.S. Cash Sales Group. FAC ¶ 43. Plaintiff's responsibilities included serving as an account manager for large, predominantly New York-based, hedge funds. FAC ¶ 44. In 2015, Plaintiff was promoted to the role of Head of New York Sales by the two managers of the U.S. Cash Department, a position in which Plaintiff managed a 14-person New York and Mid-Atlantic based sales team. FAC ¶ 66-67. In April of 2017, Plaintiff was promoted again, assuming the position of Head of U.S. sales. FAC ¶ 304. Upon the filing of the First Amended Complaint, Plaintiff was responsible for overseeing 20 sales executives globally across MacQuarie's New York, Boston, San Francisco, Atlanta, and London offices, with more than $30 million in targeted

attributed revenue to the U.S. business. FAC ¶ 87. Prior to the termination of his employment, Defendant Robert Ansell was an Executive Director in the U.S. Cash Equities department of MacQuarie. FAC ¶ 3.

On or about May 9, 2017, at the time of her most recent promotion, Plaintiff entered into a contract setting forth certain terms and conditions of her employment, to which she electronically agreed as a precondition to receiving the promotion and corresponding raise. *See* Weidy Decl., Exs. A, B, at 1–17, ECF No. 18-1. Annex A of the agreement contains a broad arbitration provision that sets forth Plaintiff's agreement to arbitrate all employment-related disputes. It states, in relevant part:

> **Arbitration Procedure**
>
> As a condition of your employment at MacQuarie, you agree that any controversy or claim arising out of or relating to your employment relationship with MacQuarie, the terms and conditions of your employment or the termination thereof must be submitted for final and binding resolution by a private and impartial arbitrator, to be jointly selected by you and MacQuarie.
>
> **Claims Covered:** This Agreement to arbitration includes any claim that could be asserted in court or before an administrative agency or claims as to which the employee has an alleged cause of action, including without limitation claims for breach of any contract or covenant (express or implied), tort claims, claims for discrimination (including, but not limited to, discrimination based on sex, pregnancy, race, national or ethnic origin, age, religion, creed, marital status, sexual orientation, mental or physical disability or medical condition, or other characteristics protected by statute), claims for wrongful discharge, violations of confidentiality or breaches of trade secrets, and/or claims for violation of any federal state or other governmental law, statute, regulation or ordinance (including, but not limited to, the Americans With Disabilities Act, the Age Discrimination in Employment Act, the Family Medical Leave Act, the Fair Labor Standards Act, the Employee Retirement Income Security Act, Title VII of the Civil Rights Act of 1964, the Genetic Information Non-Discrimination Act and any and all claims relating to your employment and/or termination of your employment with the company whether based on state law, commonwealth law, local law, statute, regulation, ordinance or common law). Disputes covered by the Procedure include all such claims whether made against MacQuarie, any of its subsidiary or affiliated entities, or its individual officers, directors, or trustees thereof (in an official or

2

personal capacity).

Weidy Decl., Ex. A, at 12-13.

Plaintiff's employment prior to May 9, 2017 was similarly governed by an agreement with a nearly identical arbitration provision, requiring "strictly confidential" arbitration of all claims "arising out of or relating to [her] employment relationship with MacQuarie." Weidy Decl., Ex. C, at 27-30. Plaintiff physically executed that prior agreement on February 6, 2012. Weidy Decl., Ex. C, at 26.

## PROCEDURAL HISTORY

On November 14, 2017, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission. FAC ¶ 27. Plaintiff then requested and received a notice of her right to sue. FAC ¶ 28. She filed her initial complaint on November 17, 2017, ECF No. 1, before filing the operative First Amended Complaint on December 8, 2017, ECF No. 14.[1]

On November 27, 2017, MacQuarie filed a Demand for Arbitration with the American Arbitration Association ("AAA") seeking a declaratory judgment that it has not committed discrimination or retaliation in violation of Title VII, the NYSHRL or the NYCHRL. Chinn Decl. ¶ 7, ECF No. 17. On November 30, the AAA served McLaughlin with MacQuarie's Demand. Chinn Decl. ¶ 8. MacQuarie and Robert Ansell moved to compel arbitration on December 22, 2017 and March 13, 2018, respectively. ECF Nos. 15, 30. On April 24, 2018, Ansell filed his Demand for Arbitration with the AAA, also seeking a declaratory judgment that he has not committed discrimination or retaliation in violation of Title VII, the NYSHRL, or the NYCHRL.

---

[1] Plaintiff has since withdrawn her first, fourth, fifth, sixth, seventh, and eighth causes of action asserted against Ansell, leaving intact only her claims that he violated the NYSHRL and NYCHRL. See Pl. Opp. Mem., at 3 n.1, ECF No. 41

Ansell Reply Mem., at 5 n.3, ECF No. 43. Both arbitration proceedings remain pending.

## LEGAL STANDARD

The Federal Arbitration Act (FAA) provides that an arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Enacted to "revers[e] centuries of judicial hostility to arbitration agreements," *Bird v. Shearson Lehman/Am. Express, Inc.*, 926 F.2d 116, 119 (2d Cir. 1991) (citation omitted), the FAA "embodies the national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts," *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006). "This policy is founded on a desire to preserve the parties' ability to agree to arbitrate, rather than litigate, disputes." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016) (alteration and citation omitted). "But the FAA does not require parties to arbitrate when they have not agreed to do so." *Id.* (citation omitted).

Under the FAA, a party to an arbitration agreement may petition a district court for "an order directing that . . . arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. "In resolving a claim that an action must be arbitrated pursuant to an arbitration agreement, [a district court] must determine: (1) whether the parties entered into an agreement to arbitrate; (2) if so, the scope of that agreement; (3) if federal statutory claims are asserted, whether Congress intended those claims to be non[-]arbitrable; and (4) if some, but not all, claims are subject to arbitration, whether to stay the balance of the proceedings pending arbitration." *Begonja v. Vornado Realty Tr.*, 159 F. Supp. 3d 402, 408–09 (S.D.N.Y. 2016) (citing *Guyden v. Aetna, Inc.*, 544 F.3d 376, 382 (2d Cir. 2008)). Although federal substantive law governs the scope of an arbitration agreement, "the presumption [in favor of arbitration] does not apply to disputes concerning whether an agreement to arbitrate has been made." *Applied Energetics, Inc. v. NewOak*

4

*Capital Mkts., LLC*, 645 F.3d 522, 526 (2d Cir. 2011). Instead, principles of state contract law govern "the threshold issue of whether the parties entered into a binding agreement to arbitrate at all." *Begonja*, 159 F. Supp. 3d at 413.

"In deciding motions to compel, courts apply a standard similar to that applicable for a motion for summary judgment." *Nicosia*, 834 F.3d at 229 (2d Cir. 2016) (citation omitted). A court must therefore "consider all relevant, admissible evidence submitted by the parties" and "draw all reasonable inferences in favor of the non-moving party." *Id.* (citation omitted).

## DISCUSSION

### I. MacQuarie's Motion to Compel

#### A. A Valid Arbitration Agreement Covers This Dispute

The first two inquiries the Court must undertake are "(1) whether the parties entered into an agreement to arbitrate [and] (2) if so, the scope of that agreement." *Begonja*, 159 F. Supp. 3d at 408–09. In opposing MacQuarie's motion to compel, Plaintiff does not contest that an arbitration agreement exists between herself and MacQuarie which covers the claims she seeks to raise before the Court. Nor would there be a valid basis for her to argue otherwise. The employment agreement between Plaintiff and MacQuarie clearly mandates confidential arbitration of any claims arising from her employment, including those for sexual harassment pursuant to Title VII and state law. Plaintiff clearly assented to these terms when she accepted the agreement.

#### B. Whether Congress Intended Title VII Claims to be Arbitrable

Plaintiff's opposition to MacQuarie's motion appears to be predicated on the notion that provisions in employment agreements requiring the arbitration of sexual harassment claims are contrary to public policy. The Court interprets this argument as Plaintiff asserting that the

arbitration of such claims is inconsistent with Congressional intent underlying Title VII.² This argument is dismissed.

Plaintiff fails to provide a single decision of any court in which a motion to compel arbitration of Title VII claims was denied on the basis that Congress intended such claims to be non-arbitrable. To the contrary, the well-settled law in this Circuit is that agreements to arbitrate claims such as those asserted here are permissible. *See Parisi v. Goldman, Sachs & Co.*, 710 F.3d 483, 487 (2d Cir. 2013); *Raiola v. Union Bank of Switz., LLC*, 47 F. Supp. 2d 499, 505 (S.D.N.Y. 1999) ("Plaintiff's attempts to demonstrate that Congress intended to preclude compulsory arbitration of Title VII claims runs counter to the overwhelming weight of authority in this circuit finding arbitration of Title VII claims to be appropriate.").³ Plaintiff's attempt to rely on FLSA cases is also unavailing, as those opinions stand only for the uncontroversial proposition that confidentiality provisions in FLSA settlement agreements are contrary to public policy because they may incentivize employers not to comply with the statute. *See Guerra-Alonso v. W. 54th Deli, Corp.*, No. 14-CV-7247, 2015 WL 3777403, at *1 (May 22, 2015). Further undercutting Plaintiff's argument, it is accepted in this Circuit that agreements to *arbitrate* FLSA claims are

---

² To the extent Plaintiff instead merely urges the Court to void the arbitration agreement on the basis of some vague notion of public policy, it declines to take such action. *See Chatziplis v. PriceWaterhouseCoopers LLP*, No. 17-CV-4109 (ER), 2018 WL 3323820, at *5 (S.D.N.Y. July 6, 2018) ("Finally, [plaintiff] raises additional arguments that set forth why, as a policy matter, he should not be forced to arbitrate his claims. He discusses the policy concerns implicated by age discrimination in the work place . . . . These arguments, however, do not change the fact that [plaintiff] entered into a valid arbitration agreement which explicitly covered [his] claims . . . . And the Supreme Court has made clear that the Federal Arbitration Act 'leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.'" (emphasis in original) (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1995)).
³ Plaintiff also has not alleged that any of the remedies available under Title VII will be unavailable to her if her claims are adjudicated by way of arbitration. There is thus no concern that she will be forced to "forgo the substantive rights afforded by the statute." *DeGaetano v. Smith Barney, Inc.*, 983 F. Supp. 459, 466 (S.D.N.Y. 1997). In any event, the Court could address any such concerns after the arbitration proceedings are concluded. *See id.*

nonetheless consistent with Congress's intent in passing that law. *See Alvarez v. Nat'l Debt Relief, LLC*, No. 16-CV-4156 (CM), 2017 WL 2876478, at *3 (S.D.N.Y. June 23, 2017).[4]

## II. Ansell's Motion to Compel

Ansell has also moved to compel arbitration of the claims asserted against him. In light of the broad language of Plaintiff's employment contract, however, it is unnecessary to separately consider whether Ansell, as a non-signatory to the agreement, may also compel arbitration. Indeed, the arbitration provision, in addition to covering claims asserted against MacQuarie, explicitly encompasses claims against the company's "individual officers, directors, or trustees thereof." Parlo Decl., Ex. A., p. 11. In such circumstances, an employer can compel arbitration of any claims asserted against an individual who holds one of the enumerated positions. *See Martin v. SCI Mgmt. L.P.*, 296 F. Supp. 2d 462, 466–68 (S.D.N.Y. 2003); *Chamois v. Countrywide Home Loans*, No. 02-CV 9550 (MBM), 2003 WL 23022033, at *1-4 (S.D.N.Y. Dec. 29, 2003).[5]

---

[4] Although Plaintiff does not explicitly make this argument, she also seems to suggest in certain portions of her moving papers that the arbitration provision at issue here is unconscionable. Because unconscionability pertains to whether a binding agreement exists in the first place, such analysis would be governed by state, rather than federal, law. *See Begonja*, 159 F. Supp. 3d at 413. Here, the parties agree that New York law governs the interpretation of the operative contract. Weidy Decl., Ex. A, at 9. To the extent Plaintiff makes such an argument, it can be readily dismissed. "Under New York law, a contract is unconscionable when it is so grossly unreasonable or unconscionable in the light of the mores and business practices of the time and place as to be unenforceable [pursuant] to its literal terms. Generally, there must be a showing that such a contract is both procedurally and substantially unconscionable. The procedural element of unconscionability concerns the contract formation process and the alleged lack of meaningful choice; the substantive element looks to the content of the contract, per se." *Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 121–22 (2d Cir. 2010) (alterations and citations omitted). Here, the Court discerns no basis in the existing law for finding that the arbitration provision contained in Plaintiff's employment agreement was unconscionable, either procedurally or substantively.

[5] Even if this were not the case, Ansell would be able to compel arbitration as a non-signatory to the employment agreement under the theory of equitable estoppel, in light of (1) the intertwined nature of the claims asserted against him and the employment contract and (2) the relationship between Plaintiff and Ansell vis-à-vis her employment agreement. *See Ross v. Am. Express Co.*, 478 F.3d 96, 100 (2d Cir. 2007). In addition, it is likely that Ansell could also compel arbitration under an agency theory. The Second Circuit has noted that "it remains an open question" whether a non-signatory may proceed to arbitration against a signatory under any theory other than estoppel. *See Ross v. Am. Express Co.*, 547 F.3d 137, 143 n.3 (2d Cir. 2008). Until that path is definitively foreclosed, however, "[c]ourts in this and other circuits consistently have held that employees or disclosed agents of an entity that is a party to an arbitration agreement are protected by that agreement." *Campaniello Imps., Ltd. v. Saporiti Italia S.p.A.*, 117 F.3d 655, 668 (2d Cir. 1997) (citation omitted); *accord Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1360 (2d Cir. 1993).

Accordingly, MacQuarie's motion is also granted as to the claims against Ansell.

**III. Stay of the Proceedings**

Finally, in addition to compelling arbitration, MacQuarie asks the Court to dismiss the matter. The Court declines to take such action and will instead stay the proceedings. The FAA requires a district court, "on application of one of the parties," to stay an action after determining that "any issue" in the action is "referable to arbitration." 9 U.S.C. § 3. In *Katz v. Cellco Partnership*, 794 F.3d 341 (2d Cir. 2015), *cert. denied*, 136 S. Ct. 596 (2015), the Second Circuit held that "the text, structure, and underlying policy of the FAA mandate a stay of proceedings [rather than dismissal] when all of the claims in an action have been referred to arbitration[.]" 794 F.3d at 347. Since all of the claims in this action will be referred to arbitration, this action is stayed.

## CONCLUSION

For the foregoing reasons, MacQuarie's motion to compel arbitration is granted and the proceedings are stayed. Ansell's motion is now moot. Plaintiff's motion for a preliminary injunction is also denied as moot. *See Lundell v. Citicorp Inv. Servs., Inc.*, No. 94-CV-8562 (WK), 1996 WL 175009, at *1 (S.D.N.Y. April 15, 1996). The Clerk of Court is respectfully directed to terminate the motions pending at docket entries fifteen, thirty, thirty-three, and thirty-six.

SO ORDERED.

Dated: August 7, 2018
New York, New York

Ronnie Abrams
United States District Judge