# Exhibit J

**Macquarie Holdings (USA), Inc. v. Khristina McLaughlin**
  **v. Macquarie Capital (USA), Inc.**
**AAA Case No. 01-17-0007-1828**
<u>**Rulings on Attorneys' Fees I**</u>

September 29, 2019

Macquarie moves for attorneys' fees related to McLaughlin's breach of contract determined in the Rulings of July 11, 2019.  (This is not a ruling on sanctions, which will follow shortly.)  For reasons explained in the July 11 rulings, fee-shifting is appropriate under the circumstances of (a) McLaughlin's late-Friday court filing, along with self-generated publicity, of what was clearly a "strictly confidential" arbitration dispute under her Arbitration Agreement; and (b) McLaughlin's announced effort to damage Macquarie's business through misleading publicity, based on her lawsuit, that Macquarie was essentially an out-of-control animal house unsuitable as a workplace or provider of financial services.  Nothing in the Parties' Arbitration Agreement or the AAA's Employment Arbitration Rules prohibits my issuing these fee-shifting rulings.

Macquarie's instant motion for reimbursement of fees is limited to the breach of contract – sealing and removing the court action to arbitration, and for trying to prove the economic impact of the McLaughlin-generated adverse publicity.  The motion includes case authority reviewing how courts assess such fee applications, as well as attorney Chinn's affidavit explaining the Manhattan-level hourly rates and heavily-redacted timesheets suggesting who worked on what during the periods at issue here.  The requested amounts:  $69,419.50 for the

1

federal court proceedings; $16,215.88 for the effort to prove contract damages in the arbitration. McLaughlin filed objections to the rates, hours, and totals, along with supporting case law.

"Sticker shock" is a common reaction to Manhattan hourly rates – even in the nearby Eastern District (Brooklyn, Staten Island, and Long Island) where federal courts have capped reimbursable rates for Manhattan firms at much lower levels.  I experienced the same shock to learn a partner at my old law firm was billing at $1,000 per hour – but that was in the 1980's.  However, as has been clear in this matter, high rates also imply lots of "been there, done that", as well as templates for major filings and technology to enhance presentation of the case.  These can reduce billable hours.  For example, in the non-precedential <u>Pasini v. Godiva</u> appended to McLaughlin's opposition, one-third of the requested fees were the cost of preparing the fee application.  Here, although inclusion is permitted, Proskauer included none.  McLaughlin's late-Friday filing in federal court represented a not-uncommon litigation strategy to evade sealing of the file and force an expensive week-end scramble which multiplies billable hours, sometimes spent by people less familiar with the issues and more susceptible to error.  Large, high-priced law firms are often the only place for a client with time-sensitive needs, <u>i.e.</u>, to seal the file and compel arbitration, and, as here, to oppose what McLaughlin contemporaneously characterized as a $40 million demand.

It is the nature and timing of McLaughlin's claims – needing immediate and forceful response to a $40 million demand plus bad publicity – that got her opposite Proskauer rather than a lower-priced firm.  Macquarie's retaining attorney Chinn was a proportionate response to McLaughlin's actions and threats.  While high billing rates were an inevitable consequence, unreasonably high legal bills were not.  Having spent 29 hearing days at Proskauer (the agreed site of the arbitration), the Parties observed the efficiencies of scale when city-in-firm

arrangements allow work to flow 24/7 while nobody need leave the premises.  Firm investments in people and technology to achieve those efficiencies create higher rates but, at least regarding the contract issues underlying this motion, fewer billed hours.

Regarding Macquarie's necessary initial responses to McLaughlin's court filing, I find the billable amount sought -- $69,419.50 – to be reasonable.  I take arbitral notice that confronting a 65-page Complaint, replete with extensive and explosive exhibits, and exacerbated by plaintiff-initiated publicity, required Proskauer's immediate selection of an appropriate (and available) team and simultaneous deployment of those lawyers and support staff.  Time was of the essence, akin to an injunction proceeding with things moving quickly on multiple fronts.  Add Ansell as a separate party, represented by separate counsel, and complications multiplied.  Their efforts achieved the court's seal of the file and then the order compelling arbitration.  Contrary to McLaughlin's arguments that the issues were not complex enough to warrant the applied-for fee, I find that her own campaign to publicize the case as a $40 million #Me Too/Harvey Weinstein-type atrocity – in court as well as on Bloomberg – required the urgent responses provided by Proskauer.  Just as McLaughlin's $40 million threat demanded proportionate opposition, so did her multimedia method of litigating.

McLaughlin takes issue not so much with partner-in-charge Chinn's hourly rate ($1010 - $1075), but with the hourly rates of the two associates ($850 - $950), that their levels of experience are insufficiently described to explain why their rates approach Chinn's.  Being familiar with partner billing rates at large Manhattan firms engaged in Manhattan-based matters, I take arbitral notice that attorney Chinn's hourly rate is reasonable.  While I lack first-hand knowledge of associate rates, I have heard of rates in the requested range and observed that associates Hayes and Fischer were highly competent throughout this arbitration.  There is no

basis to reduce their rates or billed hours in calculating a reasonable fee. Although, as noted by McLaughlin, the Proskauer billing rate structure does appear to be compressed between partner and associates, my task on this motion is not to second-guess law firm economic judgments, but to assess the reasonableness of the fees sought to be shifted. Here, Macquarie is passing along to McLaughlin the 15 percent fee discount provided the client by Proskauer – a reduction that the law does not require – as well as not charging her for this fee-shifting application.

Macquarie's motion is based, as it must be, on "true and accurate copies of the billing records for services rendered reflecting the date, description of, and amount of time spent by our Firm" on the matters ordered for fee-shifting in the Rulings of July 11, 2019. The billing records are redacted to omit portions of the entries for which Macquarie does not seek recovery. (Chinn Aff., August 2, 2019, para. 4). The redactions are insubstantial regarding work done at the outset of the dispute, between November 2017 and January 2018, when the issues had not multiplied beyond court versus arbitration. (Exhibit A to Chinn Aff.). In contrast, Macquarie's effort to prove economic loss resulting from McLaughlin's breach of contract was exerted during the arbitration while multiple issues were being encountered and billed simultaneously. Those billing records (Exhibit B to Chinn Aff.), which include work unrelated to the damages issue, are heavily redacted to eliminate the irrelevant. There is no claim that the redactions are based on attorney-client privilege or work product. Heavily redacted, these billing records (Exhibit B only) are practically unreviewable.

Insufficient specificity may defeat a fee-shifting application. New York State Ass'n. for Retarded Children, Inc. v. Carey, 711 F. 2d 1136, 1147 (2d Cir. 1983): "Hereafter, any attorney – whether a private practitioner or an employee of a nonprofit law office – who applies for court-ordered compensation in this Circuit for work done after the date of this opinion must document

4

the application with contemporaneous time records.  These records should specify, for each attorney, the date, the hours expended, <u>and the nature of the work done</u>."  (Emphasis supplied).  While the billing records supplied in Exhibit A regarding the federal court proceeding met those criteria, the records in Exhibit B on damages did not.  They were over-redacted.  Because I could not perform the required review for reasonableness, the motion for attorneys' fees in the amount of $16,215.88, related to Macquarie's damages, is denied.  This denial of fee shifting does not mean that the amount sought is excessive, only that the motion does not provide sufficient information to determine reasonableness.  Just as the underlying claim of economic injury from the contract breach was too difficult to quantify, the fee-shifting motion does not provide sufficient information to determine if the requested fee, or even some lesser amount, is proper.

## CONCLUSIONS

Based on the foregoing findings and conclusions, Macquarie's motion to recover attorneys' fees from McLaughlin for breach of contract regarding the federal court proceedings is GRANTED in the requested amount of $69,419.50; and Macquarie's motion to recover $16,215.88 for having to pursue breach of contract damages in this arbitration is DENIED.


Dated: New York, New York

      September 29, 2019

                                                                        _____

                                                           William L. Kandel, Esq., Arbitrator