# Exhibit K

**Macquarie Holdings (USA), Inc. v. Khristina McLaughlin**

  **v. Macquarie Capital (USA), Inc.**

**AAA Case No. 01-17-0007-1828**

<u>**Rulings on Attorneys' Fees II – Sanctions**</u>

October 2, 2019

Macquarie has moved over the past several months for sanctions against McLaughlin for (1) filing frivolous claims in court and in this arbitration, pursuant to the standards of Fed. R. Civ. P. 11 (hereafter "Rule 11"); (2) filing frivolous claims of sexual harassment under Title VII of the Civil Rights Act, pursuant to <u>Christiansburg Garment Co. v. EEOC</u>, 434 U.S. 412 (1978) (hereafter <u>"Christiansburg"</u>); and (3) for spoliating evidence, pursuant to Fed. R. Civ. P. 37 (hereafter, "Rule 37").  McLaughlin has opposed each basis for sanctions, accusing Macquarie of spoliation in one instance, and questioning my authority to rule on Macquarie's motions.  As to arbitral authority, there is no dispute that the Parties' Arbitration Agreement incorporates the AAA's Employment Arbitration Rules (hereafter the "EAR"), which provide:  "The arbitrator may grant any remedy or relief that would have been available to the parties had the matter been heard in court including awards of attorney's fees and costs, in accord with applicable law".  EAR 39d.  The Arbitration Agreement further provides:  "Without limiting the arbitrator's power and authority, it is understood that the arbitrator shall have the authority to entertain and rule on motions to dismiss and motions for summary judgment by any party and shall apply the standards governing such motions under the Federal Rules of Civil Procedure...."  Moreover, ruling for Macquarie on the motion to compel, Judge Abrams held that "all of the claims in this action will be referred to arbitration".  (S.D.N.Y. Dkt. No. 53).

1

Prior to point-by-point analysis of each basis for sanctions, it is necessary to address possible mitigating factors, the idea of "no harm, no foul".  Sanctions must be proportional to the harm, particularly the cost of prejudice to the opponent's case, as well as deterrents to recurrence.  The fact that Macquarie eventually (and expensively) prevailed against McLaughlin's claims and defenses is no defense to sanctions.  Pyrrhic victories are not the goal of Rules 11 and 37, or of <u>Christiansburg</u>.  The facts that AAA arbitrations are "private", and that the Parties' Arbitration Agreement required "strictly confidential" dispute resolution, should have made deterrence of others less significant than in litigation which is public.  However, by going very public from the outset – not only through her court filing but also her Bloomberg interview – McLaughlin raised the deterrence consideration here to the equivalent of a notorious court case.  Whether the arbitration hearing and rulings to date will – without sanctions – deter McLaughlin from similar behavior toward Macquarie remains doubtful, given that her closing argument on day 29 of the evidentiary hearing revealed little change from her attorney's opening months earlier, despite the overwhelming evidence that intervened.  \

There is no evidence that Macquarie's pursuit of sanctions seeks to impoverish McLaughlin or to send a warning signal to other employees:  Nothing adduced at the hearing or in the motions for sanctions suggests a "chilling" intent or effect. Macquarie, not McLaughlin, has tried to maintain the contracted-for confidentiality of this proceeding.  There has been no retaliation against McLaughlin (Ruling of July 11, 2019), and no evidence that Macquarie is using this arbitration to deter other employees from complaining about workplace issues.  Indeed, based on the Parties' last submissions, it appears that McLaughlin remains on paid leave (since April 2018) at $400,000 annually, plus a discretionary bonus for the prior fiscal year of

$300,000.  Having discussed these possibly mitigating circumstances, we proceed to

Macquarie's motions for sanctions under the "applicable law".

<u>Rule 11 Sanctions</u>:  Rule 11(b) seeks to ensure that pleadings, such as McLaughlin's 2017

federal court complaint and her 2018 arbitration counterclaims, are "not being presented for any

improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of

litigation"; are "nonfrivolous" under the law; and consist of "factual contentions [that] have

evidentiary support".  Based on the record as a whole, and particularly the Rulings on Sexual

Harassment (April 17, 2019), the Rulings on Breach of Contract by McLaughlin and Retaliation

by Macquarie (July 11, 2019), and the Rulings on Attorneys' Fees I (September 29, 2019),

McLaughlin has failed each test.

As to "improper purpose", Federal Rule 1 requires that all the rules of Civil Procedure

"be construed, administered, and employed by the court and the parties to secure the just, speedy,

and inexpensive determination of every action and proceeding".  McLaughlin's filing in court

and going public with a $40 million demand, rather than complying with "strictly confidential

arbitration", guaranteed results opposite to a "speedy and inexpensive determination".  By filing,

in November 2017, a massive and materially misleading court complaint and touting it publicly,

McLaughlin was not, by any objective measure, trying "to secure the just determination" sought

by the Rules.  Similarly, in this arbitration proceeding triggered by Macquarie's plain-vanilla 7-

page demand, McLaughlin filed, in September 2018, 55 pages of counterclaims, including six

separate counts against Macquarie – each count seeking $20 million in compensatory and $50

million in punitive damages – and signed not by the much-criticized Attorney A but by

McLaughlin's second counsel whose services she has valued.  The factor common to her court

complaint and arbitration counterclaims was McLaughlin's very active participation in the

drafting.  Because McLaughlin insisted Attorney A was responsible for the misrepresentations in her court complaint, Macquarie was permitted to explore its creation – and McLaughlin clearly had a significant hands-on role.  Besides active participation in the drafting, McLaughlin edited information before giving it to Attorney A.  (McLaughlin only admitted to excising the incriminating "and wet" prior to providing an otherwise neutral text to Attorney A, but it turned out there were other pre-submission withholdings.)  Regardless of degree of blameworthiness, it is clear that several false and misleading allegations were asserted by and on behalf of McLaughlin, which served an "improper purpose" under Rule 11(b).

As to the requirement that claims be "nonfrivolous" on matters of law, McLaughlin's arguments against enforceability of the Arbitration Agreement – particularly her alleged unawareness of it – rang particularly hollow in that she had previously signed several such agreements with Macquarie; she was familiar with other less prominently featured provisions proximate to the arbitration provisions; and Chinn had sent a letter to Attorney A reminding of the obligation of strictly confidential arbitration (which Attorney A forwarded to McLaughlin) – all prior to the approved filing of her court complaint.  McLaughlin was bound by the Arbitration Agreement, and her contrary arguments are frivolous.

As to the Rule 11 requirement that "factual contentions have evidentiary support", cross examination of McLaughlin revealed that she cherry-picked from among thousands of her text messages with Ansell to create, through misleading text trails, the "unwelcome" narrative underlying her sexual harassment claims.  "Contradictory" texts or portions were omitted. Macquarie's brief of February 14, 2019, its Rule 27 Motion for Judgment, accurately summarized (at pp. 25-28) seventeen examples from McLaughlin's testimony where her federal court complaint was false or misleading based on facts she knew at the time it was filed.

4

Without re-hashing these cited issues in detail, suffice to say they were material to her claims, rendering them factually unsupported pursuant to Rule 11.  Besides these examples, Macquarie's claims ring especially hollow because their underlying premise or motive was demonstrably false:  She solicited the assistance of Attorney A to protect and preserve her job?  No, documentary evidence shows she wanted out from Macquarie in the worst way (coincidentally with the conclusion of her Ansell relationship) and sought Attorney A as the lawyer suited to obtain a substantial severance package.  To the extent McLaughlin later waffled about her intentions to return to that workplace, she was motivated by Attorney A's later advice that her ongoing presence there would enhance her bargaining leverage.

Sanctions under Rule 11(c)(1) – (6) may not be sprung on a party without notice and opportunity for cure.  Macquarie has been raising Rule 11 in early filings and from the initial conference calls in this arbitration.  Rule 11 sanctions may be imposed on attorneys and/or parties.  Because of Attorney A's refusal to testify at the arbitration absent an air-tight waiver by McLaughlin of attorney-client privilege and work product protection, attorney sanctions in absentia would lack due process.  McLaughlin remains susceptible, however, because of her central role in all the filings on her behalf.  Rule 11 sanctions "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated".  Rule 11(c)(4).  That same Rule, as an additional element of deterrence, allows the prevailing party to recover also its "reasonable attorney's fees and other expenses directly resulting from the violation".  Rule 11(d) explicitly states its inapplicability to sanctionable conduct in discovery, which in the instant dispute involves documents and Rule 37.  McLaughlin's pleadings and related testimony make her susceptible to Rule 11 sanctions which, here, consist largely of

5

Macquarie's having to pay attorneys' fees to defend against frivolous claims advanced in a cost-inflating manner.

<u>Christiansburg</u>.  Title VII, according to the Supreme Court, permits prevailing employers to recover attorneys' fees, not just because they won (as with plaintiff employees) but "upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith".  And later: "Hence, a plaintiff should not be assessed his opponent's attorney's fees unless a court finds that his claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so.  and, needless to say, if a plaintiff is found to have brought or continued such a claim in bad faith, there will be an even stronger basis for charging him with the attorney's fees incurred by the defense."  (It should be noted that the trial court in <u>Christiansburg</u> was upheld in its decision not to award attorneys' fees to the prevailing employer.)

    <u>Christiansburg</u> thus applies essentially the same substantive standards to fee-shifting as Rule 11, without the procedural prerequisites; and <u>Christiansburg</u> is a creature of Title VII, a primary basis of McLaughlin's sexual harassment claims.  <u>Christiansburg</u> also applies not just to McLaughlin's pleadings but also because she "continued to litigate after it clearly became" evident that sufficient proof would never emerge.  Where or when that futility became apparent is an imprecise estimate, but it was substantially prior to the 29th hearing day.  McLaughlin is thus liable for a portion of Macquarie's attorneys' fees for her filing and pursuing a frivolous Title VII claim.

<u>Rule 37</u>.  Macquarie's Motion for Sanctions (May 31, 2019), deferred until now to allow the facts to emerge, asserted that McLaughlin spoliated three categories of relevant evidence, despite

receiving Macquarie's preservation notice of October 28, 2017, which covered it all: Specifically, (1) McLaughlin deleted several texts she exchanged with Ansell; (2) she deleted communications with Attorney A; and (3) McLaughlin did not retain audio recordings she had made in the workplace after initiation of her litigation.  The preservation notice was sufficiently comprehensive and timely to require McLaughlin to articulate at least a credible explanation for the absence of this information.  Otherwise, the conclusion would be spoliation, "the destruction or the significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation".  West v. Goodyear Tire & Rubber Co., 167 F. 3d 776, 779 (2d Cir. 1999).

Here, the issue is discovery of electronically stored information ("ESI"), and application of Rule 37(e).  Under Rule 37(e), ESI that should have been preserved "and is lost because a party failed to take reasonable steps to preserve it" may be subject to sanctions proportionate to cure the prejudice.  Rule 37(e) adds another prerequisite to sanctions:  the ESI "cannot be restored or replaced through additional discovery".

Macquarie urges that McLaughlin not only "failed to take reasonable steps to preserve" relevant ESI on her phone, she also deleted very selectively several of her texts to Ansell that showed their sexual relationship was consensual and welcome.  McLaughlin asserts she deleted texts routinely without intent or effect to strengthen her case.  If true, then the deletions would have been in cohesive segments, not hop-scotching so as to pass over and skip proximate texts which were retained.  Substantively, if McLaughlin's account was truthful, the results of the deletions in terms of favorable/unfavorable evidence would have been random.  They were not: The missing texts retrieved by the testifying expert Alexander Barnett were one-sidedly against McLaughlin's positions.  Discovery from Ansell's phone revealed more otherwise missing texts,

all of which were not only relevant but also helpful to Macquarie's position on welcomeness. Barnett testified credibly that selective deletions on the scale indicated here would have been no casual exercise for McLaughlin, consuming hours.

McLaughlin's proffered defense to these allegations, besides denying any conscious effort, was that it made no sense for her to delete only some, but by no means all, of the texts that were against her interests.  However, whether only partial deletions could suggest lack of intent to spoliate, it could also indicate distraction or carelessness; or it could be akin to McLaughlin's admitting her deletion of "and wet", but denying she made all the other deletions which were later discovered.  Neither makes sense, unless it seeks a counterpoint to "false in one/false in all" in a new formulation "truthful in one/truthful in all".  I reject both shortcuts to reviewing and evaluating the specific evidence here.  To argue that only partial spoliation implies absence of a concealment motive is not a credible explanation, much less justification for McLaughlin's Rule 37(e) "intent to deprive" Macquarie of relevant information.

McLaughlin's spoliation of welcomeness evidence is mitigated, pursuant to Rule 37(e), because it could be "restored or replaced through additional discovery", albeit incompletely and expensively.  Because Macquarie prevailed on welcomeness, the remedies of adverse inference or striking claims or defenses no longer need be invoked.  The extra costs incurred by Macquarie to retrieve the deleted ESI must be reimbursed by McLaughlin after opportunity to address the reasonableness of Macquarie's forthcoming fee application.

McLaughlin also deleted some of her ESI regarding communications with Attorney A and his law firm, which began in October 2017 close to the time of his opening letter to Macquarie on October 23, 2017.  McLaughlin has a point that she should not have expected

Macquarie's preservation notice to cover attorney-client communications. I agree with that in general. However, McLaughlin's communications sometimes attached her texts with Ansell, photographs, and recordings which were discoverable by Macquarie and likely admissible in the arbitration. Moreover, the law on spoliation is not forgiving with respect to the obligation to retain ESI of purely attorney-client communications. As long as the information appears to be relevant, the obligation to preserve includes privileged material. <u>Zimmerman v. Poly Prep Country Day School</u>, 2011 WL 1439332, at *20 (E.D.N.Y. April 13, 2011) (imposing sanctions for spoliation of privileged materials); <u>Gutman v. Klein</u>, 2008 WL 4682208, at 8, *12 (E.D.N.Y. Oct. 15, 2008) (despite "privileged" and "confidential" labels, deleted files could have been relevant and useful in discovery, so sanctions for spoliation). Here, McLaughlin was on notice since October 2017 – from Attorney A – of the likelihood of litigation, and from Macquarie of her obligations to arbitrate and to preserve her files. The law extended that obligation to communications with Attorney A.

Prejudice to Macquarie from McLaughlin's deletion of the Attorney A files was mitigated by her involuntary waiver of attorney-client privilege (via finger-pointing as to who was blameworthy) which enabled Macquarie to obtain some files from Attorney A through McLaughlin's second attorney. The bulk of information was the history of drafting the court complaint and the lead role of McLaughlin. Absent were the audio recordings of workplace encounters secretly made by McLaughlin which she claimed to have sent to Attorney A. Some of these recordings were of office meetings among McLaughlin and Macquarie managers and executives, the contents of which witnesses tried to replicate by memory at the arbitration hearing. Having the recorded versions would have been somewhat helpful, given that only McLaughlin and/or her lawyers knew the recordings were being made. Their absence could

9

create the negative inference that they would have supported Macquarie's version of the evidence. I did not feel the need to do that in my prior Rulings previously referenced: Macquarie's versions of the facts were more persuasive even without any negative presumption, particularly on the issue of whether McLaughlin had requested and appropriately received a paid leave of absence, which she did. Accordingly, the prejudice to Macquarie from this spoliation of Attorney A communications and recordings was limited to extra attorneys' fees incurred to prove what they were able to prove anyway through other evidence.

McLaughlin asserts spoliation by Macquarie involving the disappearance of a videotape from the elevator bank outside the office which would show a co-worker ignoring her need for help getting into the office. As described in my Ruling of July 11, 2019 (at p. 18), the incident was dealt withy internally by Macquarie with McLaughlin's apparent assent. The Ruling described it as "inconsequential" in terms of McLaughlin's retaliation claims – and it remains so with respect to spoliation. Little testimony occurred on this topic at the hearing, and McLaughlin did not choose to call the co-worker as a witness. There was no evidence that Macquarie ever had custody or control of the tape, which appeared to be the property of building security or a contractor. Rule 37 does not apply to fact situations like this one.

McLaughlin asserted twice in her closing statement that Macquarie profited from her revelations about Ansell – that, as a result, he was forced to forfeit millions of dollars worth of stock and/or options. While the record before me does not contain this evidence, the idea is that her claims were tantamount to those of a whistleblower and deserve financial reward and recognition – here, an offset against sanctions leveled against her. Otherwise, Macquarie alone receives unjust enrichment. The problem with this argument is its inapplicability here:

10

McLaughlin was complicit not only in the affair but in keeping it a secret.  She cannot now claim to be the source of any financial benefits from Ansell's termination.

## CONCLUSIONS

Based on the findings and conclusions herein, and, where applicable, prior Rulings in this matter cited herein, Macquarie's motions for sanctions pursuant to Rules 11 and 37 of the Federal Rules of Civil Procedure, as well as <u>Christiansburg Garment Co. v. EEOC</u>, are GRANTED

Macquarie's remedy shall be proportionate attorneys' fees and expenses associated with extra efforts expended on spoliation, defending against the sexual harassment and retaliation claims, working with outside experts related to those disputes, and fees incurred in bringing these motions.  Excluded from this remedy are attorneys' fees and expenses related to breach of contract, resolved in the Rulings on Attorneys' Fees I, dated September 29, 2019.

Macquarie shall submit its fee application within 30 calendar days of this Ruling. McLaughlin shall have 30 days from receipt of the fee application to respond.

Pursuant to my authority under EAR 48 and EAR 34 to reopen the hearing "upon the arbitrator's initiative", I declare that this hearing, scheduled to close October 3, 2019, shall remain OPEN or, if necessary, be REOPENED for the limited purpose of deciding Macquarie's fee application which is the subject of today's Rulings.

Dated:  New York, New York

   October 2, 2019         _____

                                                   William L. Kandel, Esq., Arbitrator

11