| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>SOUTHERN DISTRICT OF NEW YORK | USDC-SDNY<br>DOCUMENT<br>ELECTRONICALLY FILED<br>DOC#:<br>DATE FILED: |

MACQUARIE HOLDINGS (U.S.A.), INC.,

                Petitioner,

             v.

KHRISTINA MCLAUGHLIN,

                Respondent.

17-CV-9023 (RA)

MEMORANDUM
OPINION AND ORDER

RONNIE ABRAMS, United States District Judge:

    Petitioner Macquarie Holdings (U.S.A.), Inc. ("Macquarie") seeks confirmation of an arbitration award entered against Respondent Khristina McLaughlin. McLaughlin does not oppose the petition. For the reasons that follow, the petition is granted.

## BACKGROUND

    Macquarie is a Delaware-based investment banking and diversified financial services group. McLaughlin is a former employee of Macquarie.

    McLaughlin became an employee of Macquarie in February 2012, when she signed an employment agreement which contained an annexed arbitration agreement. Dkt. 75 Ex. C at 27–38. These agreements were renewed in May 2017, when McLaughlin assumed a new role as "Head of US Sales, Cash Equities." *Id*. at 12. The "Employment Agreement" and annexed "Arbitration Agreement" executed between McLaughlin and Macquarie in May 2017 were materially identical to the ones signed in 2012. *Id*. at 12–25. The Arbitration Agreement provided that "all claims relating to [McLaughlin's] employment" would be resolved in "strictly confidential" arbitration between the parties. *Id*. at 22–23.

    On November 17, 2017, McLaughlin filed a complaint in this Court asserting claims for sexual harassment, discrimination, and retaliation against Macquarie. McLaughlin sought $20,000,000 in

compensatory damages and $20,000,000 in punitive damages. Dkt. 1. Soon after, Macquarie moved to seal the complaint and compel arbitration pursuant to the Arbitration Agreement. Dkt. 2. On August 7, 2018, this Court granted Macquarie's petition to compel arbitration and stayed this action pending the outcome of the arbitration. Dkt. 53.

The parties conducted arbitration in front of Arbitrator William Kandel on 29 non-consecutive days from October 29, 2018 to May 16, 2019. Chin Declaration, Dkt. 75, ¶ 16. On April 17, 2019, the arbitrator issued a decision titled "Rulings on Sexual Harassment," Dkt. 75 Ex. G, dismissing McLaughlin's claims of sexual harassment and retaliation and reserving decision on Macquarie's request for sanctions until a more complete record could be developed. *Id*. at 20.

On July 11, 2019, the arbitrator issued a decision titled "Rulings on Breach of Contract by McLaughlin and Retaliation by Macquarie." Dkt. 75 Ex. H. The Arbitrator found that McLaughlin breached the arbitration agreement between the parties based on her filing of a complaint in this Court, and was therefore liable for

> (a) Macquarie's attorneys' fees and expenses incurred from court proceedings related to the Complaint, because this dispute was contractually committed to arbitration; and (b) Macquarie's attorneys' fees and expenses incurred trying to prove damage to its business directly attributable to McLaughlin's breach of her contractual obligations of confidentiality and to pursue confidential arbitration.

*Id*. at 12. The arbitrator further held that McLaughlin had been unable to prove any unlawful retaliation on the part of Macquarie. *Id*. at 23.

On September 22, 2019, the arbitrator issued another decision, this one titled "Rulings on Attorney's Fees I." Dkt. 75 Ex. J. In this decision, the arbitrator granted Macquarie's request for $69,419.50 in attorneys' fees as a result of McLaughlin's breach of contract and the resulting time Macquarie spent "trying to prove the economic impact of the McLaughlin-generated adverse publicity." *Id*. at 1, 5. The arbitrator denied Macquarie's request for an additional $16,215.88 in attorneys' fees on the basis of insufficient specificity. *Id*. at 5.

On October 2, 2019, the arbitrator issued a third decision, this one titled "Rulings on Attorney's Fees II – Sanctions." Dkt. 75 Ex. K. In this decision, the arbitrator made several rulings about McLaughlin's conduct throughout this case, finding that she and her attorneys had made "false and misleading allegations," frivolous arguments, and had spoliated evidence with the intent of depriving Macquarie of relevant information. *Id*. at 4, 8. The arbitrator thus determined that Macquarie's motion for sanctions under Federal Rules of Civil Procedure 11 and 37, as well as under *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412 (1978), should be granted, and a hearing was scheduled to decide Macquarie's fee application in light of the decision. *Id*. at 11.

Lastly, on February 5, 2020, the arbitrator issued two final rulings, titled "Reasons for Sanctions in Final Award," Dkt. 75 Ex. M, and "Final Award," Dkt. 75 Ex. L. In the ruling titled "Reasons for Sanctions in Final Award," the arbitrator—after further explaining the basis for the sanctions against McLaughlin as well as his authority to issue them—ordered that McLaughlin pay Macquarie $60,000 in sanctions, to be paid in in quarterly installments of $5,000. Dkt. 75 Ex. M at 15—16.[1] In the Final Award, the arbitrator incorporated his previous rulings into a full and final resolution of all matters raised and terminated the arbitration. Dkt. 75 Ex. L, ¶ 1–2, 6–8.

On July 8, 2020, Macquarie brought this timely petition to confirm the arbitration award under the Federal Arbitration Act, 9 U.S.C. § 9. McLaughlin filed no opposition to the petition.

**STANDARD OF REVIEW**

---

[1] Recognizing that a central goal of Rule 11 sanctions is to deter misconduct, the arbitrator also set forth mechanisms through which these sanctions could be adjusted in response to McLaughlin's conduct. Dkt. 75 Ex. M at 15–16. For example, the decision provided that if McLaughlin demonstrated to a third-party administrator that she was "diligen[tly] seeking or obtaining gainful employment," the total sanctions award would be reduced. *Id*. at 16. On the other hand, if she again breached the Arbitration Agreement's confidentiality requirement, the entire $60,000 would become immediately due in full. *Id*. at 15.

The Federal Arbitration Act provides that any party to an arbitration may petition for an order confirming an arbitration award, and that a court "must grant such an order unless the award is vacated, modified, or corrected[.]"  9 U.S.C. § 9.  Such an order gives the arbitration award "force and effect," as "arbitration awards are not self-enforcing."  *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 104 (2d Cir. 2006) (alteration and internal quotation marks omitted).

"The role of a district court in reviewing an arbitration award is 'narrowly limited' and 'arbitration panel determinations are generally accorded great deference under the Federal Arbitration Act.'"  *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust*, 729 F.3d 99, 103 (2d Cir. 2013) (alteration omitted) (quoting *Tempo Shain Corp. v. Bertek, Inc.*, 120 F.3d 16, 19 (2d Cir. 1997)); *see also Landy Michaels Realty Corp. v. Local 32B 32J, Serv. Emps. Int'l Union, AFL-CIO*, 954 F.2d 794, 797 (2d Cir. 1992) ("[A]n arbitration award should be enforced, despite a court's disagreement with it on the merits, if there is a barely colorable justification for the outcome reached." (quoting *Andros Compania Maritima, S.A. v. Marc Rich & Co.*, 579 F.2d 691, 704 (2d Cir. 1978)) (internal quotation marks omitted)).  The court's inquiry here "focuses on whether the arbitrators had the power, based on the parties' submissions or the arbitration agreement, to reach a certain issue, not whether the arbitrators correctly decided that issue."  *DiRussa v. Dean Witter Reynolds, Inc.,* 121 F.3d 818, 824 (2d Cir. 1997).  Courts are restrained in this way "in order to avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation."  *Folkways Music Publrs., Inc. v. Weiss*, 989 F.2d 108, 111 (2d Cir. 1993).

The petition to confirm arbitration in this case is not contested by McLaughlin.  An unopposed motion to confirm an arbitration should be "treated as akin to a motion for summary judgment based on the movant's submissions."  *D.H. Blair*, 462 F.3d at 109.  "Even when a motion for summary judgment is unopposed, the district court is not relieved of its duty to decide whether the movant is entitled to

4

judgment as a matter of law." *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 242 (2d Cir. 2004).

## DISCUSSION

The Court agrees with Macquarie that the award should be confirmed.

As an initial matter, Macquarie has demonstrated that arbitration was appropriate in this case. The Arbitration Agreement between the parties required McLaughlin to settle "any and all claims relating to [her] employment" via "strictly confidential" arbitration. Dkt. 75 Ex. C at 22–23. McLaughlin's allegations of sexual harassment, discrimination, and retaliation by Macquarie clearly fall clearly within the broad category of "claims relating to [her] employment," and arbitration was thus the proper venue for this dispute.

This Court also finds that the arbitrator acted within the scope of his authority in deciding these claims and crafting his award. The Arbitration Agreement provides that "[t]he arbitrator shall have the power to award all remedies that could be awarded by a court or administrative agency in accordance with the governing and applicable substantive law relating to covered claims[.]" *Id.* at 37. The award granted by the arbitrator to Macquarie—payment of attorney's fees and sanctions under Federal Rules of Civil Procedure 11 and 37, as well as under *Christiansburg Garment*—are all remedies "that could be awarded by a court … in accordance with the governing and applicable substantive law relating to covered claims[.]" Dkt. 75, Ex. C at 37. *See also Reliastar Life Ins. Co. v. EMC Nat'l Life Co.*, 564 F.3d 81, 87 (2d Cir. 2009) (finding that "the underlying purposes of arbitration, i.e., efficient and swift resolution of disputes without protracted litigation, could not be achieved but for good faith arbitration by the parties" and that "sanctions, including attorney's fees, are appropriately viewed as a remedy within an arbitrator's authority to effect the goals of arbitration.").

Further, Macquarie has submitted sufficient evidence demonstrating that the arbitrator's award of sanctions is appropriate in light of the conduct of McLaughlin and her attorneys throughout this action.

Despite the fact that "the arbitration shall be strictly confidential," Dkt. 75, Ex. C at 36, McLaughlin filed a public complaint in this Court, in clear violation of the agreement. The arbitrator appropriately found that "responsibility for . . . breaching the Arbitration Agreement and filing the Complaint rests squarely with McLaughlin," Dkt. 75, Ex. H at 8, and thus determined that McLaughlin was liable for those attorneys' fees Macquarie incurred while defending the action in federal court. *Id.* at 9.

It is less clear whether sanctions would be appropriate if McLaughlin had simply filed this complaint in contravention of the Arbitration Agreement, but thereafter acquiesced to arbitration. *See, e.g.*, *Optimus Communs. v. MPG Assocs.*, 841 F. Supp. 2d 722, 726–27 (E.D.N.Y. 2012) (finding that, despite plaintiff's "objectively unreasonable" claims that an arbitration agreement did not cover a contract dispute, sanctions were not warranted, as the "two-step" analysis required in determining whether an arbitration agreement is applicable to a given dispute may sometimes lead to an erroneous result). But here, McLaughlin did not simply file this complaint and oppose Macquarie's motion to compel arbitration (Dkt. 26); more concerningly, the arbitrator found that McLaughlin and her attorneys made "false and misleading allegations," presented frivolous arguments, and spoliated evidence with the intent of depriving Macquarie of relevant information. Dkt. 75 Ex. K at 4–12. This conduct clearly exposed her to the possibility of sanctions. *See SEC v. Smith*, 710 F.3d 87, 97 (2d Cir. 2013) ("Under Rule 11(c)(3) … sanctions are appropriate where an individual has made a false statement to the court and has done so in bad faith."); *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999) (noting that sanctions under Rule 37 can be a proper remedy for spoliation of evidence and that "the applicable sanction should be molded to serve the prophylactic, punitive, and remedial rationales underlying the spoliation doctrine."). Consistent with the strong deference that Second Circuit precedent generally shows arbitrators, this Court finds that the sanctions issued by the arbitrator are a reasonable remedy for McLaughlin's conduct.

Finally, the amount that McLaughlin owes is not in dispute. The arbitrator determined that Macquarie incurred $69,419.50 in attorneys' fees responding to McLaughlin's original public filing in this Court and "trying to prove the economic impact of the McLaughlin-generated adverse publicity." Dkt. 75 Ex. J at 1, 5. The arbitrator further determined that McLaughlin owed up to $60,000 in sanctions.[2] Dkt. 75 Ex. M at 16–17. There is no evidence to suggest that this amount is incorrect or that the arbitrator exceeded his authority in determining this value. Nor has McLaughlin disputed these numbers.

## CONCLUSION

Accordingly, the petition to confirm the arbitration award is granted. The Clerk of Court is directed to enter judgment in the amount of $69,419.50 in attorney's fees, with an additional $60,000 in sanctions. The Clerk of the Court is also respectfully directed to close this case.

Dated:   November 19, 2020
         New York, New York

RONNIE ABRAMS
United States District Judge

---

[2] This Court approves the full amount of sanctions awarded, with the understanding that McLaughlin may be permitted to pay substantially less if she, *inter alia*, demonstrates "diligence seeking or obtaining gainful employment." . *See* Dkt. 75 Ex. M at 15–16.